JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Eric Yates, appeals from the judgment of the Cuyahoga County Court of Common Pleas finding him guilty of two counts of felonious assault, with one-and three-year firearm specifications, and having a weapon while under a disability, and sentencing him to five years in prison. After reviewing the facts and the pertinent law, we affirm.
 {¶ 2} On December 20, 2005, a Cuyahoga County Grand Jury indicted Yates on two counts of felonious assault, in violation of R.C. 2903.11, with one-and three-year firearm specifications, and one count of having a weapon while under a disability, in violation of R.C. 2923.13. Yates entered pleas of not guilty to the charges. *Page 3 
 {¶ 3} On August 2, 2006, a bench trial commenced. Counsel stipulated to the admission of Gregory Robinson's ("victim") medical records and a copy of Yates' drug trafficking conviction. The following testimony was offered at trial.
 {¶ 4} The victim testified that on September 6, 2005, at approximately 4:00 p.m., he and his co-workers, Derrick Davis and David Couch, rode the bus from work to East 102nd Street, in Cleveland.[1] They walked up the street and saw Yates riding a bicycle.[2] The victim stated that Yates pulled up to two young black males and "[t]hey got into a confrontation and — and the young guy * * * mugged [Yates]." The victim explained that "mugged" meant, "push, shoved in the face." He stated that Yates kept reaching into his pocket for something. The victim grew up in that neighborhood and said that he had seen Yates about eight to ten times prior to the incident.
 {¶ 5} The victim, Davis, and Couch continued to walk and the two young males walked behind them. Yates rode his bike in front of all of them and said, "[f]uck all you niggers, like I'll kill all you all niggers, shoot all you all niggers." The victim testified, "I'm looking at him like, you know, what is he saying that to me for, you know what I mean, because I ain't got nothing to do with it. * * * It's like you bringing all of us in." The victim then said to Yates, "get on with that bullshit, ain't *Page 4 
nobody got time for that bullshit." Yates replied, "I'll be back[,]" and he rode away on his bike.
 {¶ 6} The victim stated that approximately twenty to thirty seconds later, he walked through an alley off East 104th Street and saw Yates enter the alley from the opposite end. Yates rode his bike toward the victim, got off, and said, "I should have popped your bitch ass." The victim replied, "put down the gun. You know, if you got a problem, let's work it[.]" He said that he knew Yates had a gun because "that first time when he was down the street, he kept on like going in his pocket. You know, you can tell when somebody got something."
 {¶ 7} The victim further testified that Yates stood three to four feet away from him, pulled a gun out of his pocket, and fired approximately six times. The victim was shot twice; one bullet went through his left arm and another bullet lodged in his neck. At the time of the trial, the bullet remained lodged near his spinal cord. He described the gun as a small black revolver. The victim said Couch helped him walk to Diana Coleman's house, which was near the alley. Coleman called for an ambulance and the victim was admitted to the hospital for three days.
 {¶ 8} On cross-examination, the victim stated that he identified Yates from a photo array. He agreed that his medical records indicated a blood alcohol level greater than .10 percent and that PCP and cannabis were detected in his system, but he stated that he was not under the influence of these drugs when the incident occurred. *Page 5 
 {¶ 9} Couch corroborated the victim's testimony. He stated that after the first confrontation, Yates rode away on his bike and said, "I'll come back around here and I will lay it all down here; the hell with you all." The victim replied, "* * * get the hell on with that; ain't nobody on that bullshit."
 {¶ 10} Couch also said that he, the victim, and Davis were walking through the alley when Yates rode his bike up to the victim and got off his bike. Couch heard Yates say to the victim, "I should shoot your bitch ass now[.]" The victim replied, "* * * put the gun down and put your hands up and fight like a man." Couch said that Yates pulled out a gun and shot approximately five times at the victim. He said he saw blood coming out of the victim's neck and arm. He described the gun as a black, twenty-two or thirty-five, automatic pistol. He helped the victim across the street to Coleman's house and she called the paramedics.
 {¶ 11} On cross-examination, Couch said that the two young males "walked off after their confrontation with Yates. He later clarified that the two males walked ten feet behind them and, "[t]hey was walking the same way we was walking, but they wasn't with us." He also said that the young males were still walking behind them when the shooting occurred in the alley. Couch saw shell casings eject from the gun when it was fired, but said detectives told him that shell casings were never found. He never provided a statement to the police. *Page 6 
 {¶ 12} Coleman testified that before the shooting, she saw Davis and the victim walk down the alley by her house. She also observed another male in the alley "place his hand in his pocket and then coming back out of his pocket." She turned her head and ran onto her porch and heard five gunshots. She then saw the victim lying on the ground and called 9-1-1. She said that Davis helped the victim walk to her house.
 {¶ 13} On cross-examination, Coleman testified that the victim, Davis, and another male were the only ones in the alley. She did not remember seeing a bicycle.
 {¶ 14} Cleveland Police Officer Robert Levasseur, testified that he responded to the crime scene and saw the victim in the ambulance with his "brother," but he did not know his brother's name. He also said that Davis was at the scene. He observed the crime scene, but did not find shell casings or bullet holes.
 {¶ 15} Cleveland Police Detective Joseph Williams, testified that the victim gave him a statement and identified Yates from a photo array.
 {¶ 16} The state rested its case, then Yates rested his case without calling any witnesses. The trial court found Yates guilty of two counts of felonious assault, in violation of R.C. 2903.11, with one-and three-year firearm specifications, and one count of having a weapon while under a disability, in violation of R.C. 2923.13.
 {¶ 17} On September 12, 2006, the trial court sentenced Yates to a total of five years in prison. Yates was sentenced to two years in prison for each count of *Page 7 
felonious assault, which the court merged for purposes of sentencing, and one year in prison for having a weapon while under a disability, to run concurrent with one another. The court further sentenced Yates to three years for the mandatory firearm specification, which the trial court merged for purposes of sentencing with the one-year firearm specification, and ordered that it run prior to and consecutive with, the underlying felonies. The trial court also informed Yates that he would have to serve three years of post-release control following his release from prison.
 {¶ 18} It is from this judgement that Yates appeals and raises the following assignments of error:
 {¶ 19} "[1.] The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.
 {¶ 20} "[2.] Appellant's conviction is against the manifest weight of the evidence.
 {¶ 21} "[3.] Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article 1, of the Ohio Constitution and the Sixth and Fourteenth Amendments when counsel failed to ask the trial court to consider the instruction on self-defense.
 {¶ 22} "[4.] Appellant was denied his right to a fair trial when the prosecutor, during closing argument, improperly vouched for the credibility of a witness." *Page 8 
 {¶ 23} In his first assignment of error, Yates asserts that the trial court erred when it denied his motion for acquittal because there was insufficient evidence that he committed the offenses.[3]
 {¶ 24} In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court of Ohio explained that sufficiency of the evidence and weight of the evidence are not synonymous legal concepts. They are "both quantitatively and qualitatively different." Id.
 {¶ 25} The court explained:
 {¶ 26} "[w]ith respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a *Page 9 
question of law. State v. Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 45 * * *, citing Jackson v. Virginia (1979), 443 U.S. 307 * * *." (Parallel citations omitted.) Id. at 386-387.
 {¶ 27} When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. State v.Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at Tf17. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 28} In the case at bar, Yates was convicted of two counts of felonious assault, in violation of R.C. 2903.11, which provides:
 {¶ 29} "(A)(1) [n]o person shall knowingly * * * [c]ause serious physical harm to another * * *.
 {¶ 30} "(A)(2) [n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 31} Yates was also convicted of having a weapon while under a disability in violation of R.C. 2923.13(A)(2), which provides, "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance if * * * [t]he person * * * has *Page 10 
been convicted of any offense involving the illegal * * * trafficking in any drug of abuse
 {¶ 32} A review of the record indicates that there was sufficient evidence to support Yates' convictions. The victim testified that at the first confrontation, while Yates rode his bike away he said, "[f]uck all you niggers, like I'll kill all you all niggers, shoot all you all niggers." Then, twenty to thirty seconds later, Yates rode his bike through the alley, up to the victim, got off his bike, and said, "I should shoot your bitch ass now[.]"
 {¶ 33} Both the victim and Couch testified that Yates stood three to four feet away from the victim, pulled a gun out of his pocket, and fired it approximately six times. Yates shot the victim twice, in the arm and the neck. One bullet passed through the victim's left arm and the other bullet is still lodged in the victim, near his spinal cord. The victim identified Yates after the incident from a photo array and in court as the shooter. Additionally, counsel stipulated that Yates was previously convicted of drug trafficking.
 {¶ 34} After reviewing the testimony of the witnesses in a light most favorable to the state, as well as the respective elements of the offenses, we conclude the evidence was sufficient to convict Yates of two counts of felonious assault, with firearm specifications, and having a weapon while under a disability, beyond a reasonable doubt. Thus, Yates' first assignment of error is overruled. *Page 11 
 {¶ 35} In his second assignment of error, Yates maintains that his convictions were against the manifest weight of the evidence.
 {¶ 36} In Thompkins, supra at 387, the Supreme Court of Ohio stated:
 {¶ 37} "[although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. [State v. Robinson (1955), 162 Ohio St. 486, 487]. Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 38} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs v.Florida, 457 U.S. 31, 42]. See, also, State v. Martin (1983),20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest *Page 12 
miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
 {¶ 39} With this standard in mind, we conclude that Yates' convictions were not against the manifest weight of the evidence. Again, the victim and Couch testified that Yates first threatened to shoot them when he rode away on his bike. Shortly thereafter, Yates threatened to shoot the victim in the alley a second time. They explained that Yates fired his gun five or six times and he shot the victim twice, in the arm and neck. The victim also identified Yates from a photo array and in court as the shooter.
 {¶ 40} Furthermore, Coleman observed the victim, Davis, and a third male in the alley. She said the male placed his hand in his pocket and, as he pulled his hand out, she ran onto her porch and heard five gunshots. She witnessed the victim lying on the ground and she called 9-1-1. Officer Levasseur also observed Davis at the scene and the victim in the ambulance with his "brother."
 {¶ 41} However, Yates argues that the victim is not credible because he denied being intoxicated during the incident, but his blood was positive for alcohol, PCP, and cannabis. Yates also contends that Couch is not credible because Coleman never testified that Couch was at the scene and he never gave a statement to police. *Page 13 
 {¶ 42} The jury, as the factfinder, was free to believe all or part of the testimony presented at trial. After reviewing the testimony, we cannot conclude that the trier of fact lost its way. There was not such a "manifest miscarriage of justice" that the convictions should be reversed and a new trial ordered. Accordingly, Yates' second assignment of error is overruled.
 {¶ 43} In his third assignment of error, Yates asserts that he was denied effective assistance of counsel because his trial counsel failed to request that the trial court consider self-defense.
 {¶ 44} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v. Bradley (1989),42 Ohio St.3d 136, 141-142, citing Strickland v. Washington (1984),466 U.S. 668, 687. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Strickland at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, supra, at 143.
 {¶ 45} Thus, we must determine if Yates would have likely been successful in presenting a claim of self-defense. If so, his counsel would be ineffective for not raising it. *Page 14 
 {¶ 46} To establish a claim of self-defense, a defendant must prove the following: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. Since Ohio has a subjective test to determine whether a defendant acted in self-defense, the defendant's state of mind is a crucial issue. State v. Koss (1990),49 Ohio St.3d 213, at 215.
 {¶ 47} First, Yates contends that he was not at fault in creating the situation because the victim wanted to fight him. The evidence shows, however, that as Yates rode away on his bike, he threatened to kill the victim and the other males. Yates then saw the victim in the alley, rode his bike up to the victim and threatened to shoot him. Couch stated that the victim told Yates to "* * * put the gun down and put your hands up and fight like a man." Thus, Yates created the situation when he returned to threaten the victim with a gun.
 {¶ 48} Secondly, Yates maintains that he reasonably believed he had to protect himself because a male had pushed him in the face. Even if Yates mistakenly believed that he was in imminent danger, it was not reasonable for him to believe that he had to use deadly force to protect himself because he was pushed in *Page 15 
the face. The testimony did not demonstrate that the victim or the other males had a weapon and/or that they threatened Yates with it.
 {¶ 49} Lastly, Yates claims that he could not retreat because he was outnumbered. However, there was no evidence that the victim or the other males would not let Yates leave the alley, causing him to believe that he could not retreat. Nothing prevented Yates from riding away on his bike, as he had done previously.
 {¶ 50} Thus, defense counsel was not ineffective for not raising self-defense because Yates could not have established that he shot the victim in self-defense. Therefore, Yates' third assignment of error is overruled.
 {¶ 51} In his fourth assignment of error, Yates argues that he was denied his right to a fair trial when the state improperly vouched for the credibility of the victim during closing arguments. Specifically, Yates claims that the prosecutor committed misconduct when he stated, "I also would like to note for the record, your Honor, that in preparing for this trial [the victim] was never shown a copy of his statement. I did not prep him by showing him that copy, and any memory he has of that afternoon is not based on recent review of that statement. And I can assert that for the record as being the one that prepared this witness."
 {¶ 52} Our review of the record shows Yates failed to object to the prosecutor's comments and thus, waived all but plain error. State v.Frazier, 115 Ohio St.3d 139, at _169, citing State v. Slagle (1992)65 Ohio St.3d 597, 604. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they *Page 16 
were not brought to the attention of the court." An error is not prejudicial for the purposes of plain error review unless, "but for the error, the outcome of the trial clearly would have been otherwise."State v. Long (1987), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 53} The test to determine if there was prosecutorial misconduct during closing arguments is whether the remarks were improper and if so, whether they prejudicially affected the defendant's substantial rights.State v. Smith (1984), 14 Ohio St.3d 13, 14. The record as a whole must be reviewed in its entirety to determine whether the disputed remarks were unfairly prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150,157. The touchstone of our analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219. Furthermore, an appellant must show that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994),71 Ohio St.3d 61, 78-79, overruled on other grounds.
 {¶ 54} The state must avoid assertions which are calculated to mislead a jury. Smith, 14 Ohio St.3d at 14. It is improper for an attorney to express his personal belief or opinion as to the guilt or credibility of a witness. Id. Further, a prosecutor may not invade the realm of a jury by alluding to matters outside of the record. State v. Baker,159 Ohio App.3d 462, 2005-Ohio-45, _19. However, "[i]solated comments by a prosecutor are not to be taken out of context and be given their most damaging *Page 17 
meaning." State v. Hill (1996), 75 Ohio St.3d 195, 204, citingDonnelly v. DeChristoforo (1974), 416 U.S. 637, 647, 94 S. Ct. 1868.
 {¶ 55} In the instant case, the prosecutor noted that the victim did not review his written statement prior to trial and therefore, his testimony was not based on his statement, but on his memory. The victim did not testify that he did not review his written statement prior to trial. Thus, the prosecutor alluded to a matter that was not in evidence. Moreover, the prosecutor's comments border on invading the province of the factfinder, since the prosecutor appears to have given a personal belief about the victim's credibility.
 {¶ 56} Nevertheless, assuming arguendo, that the comments were improper, after reviewing the record in its entirety, Yates has failed to demonstrate that the remarks prejudicially affected his right to a fair trial. The trial court judge, as the fact finder in this case, heard evidence from five different witnesses that demonstrated Yates' guilt. Consequently, Yates has not demonstrated that the state committed plain error and that there is a reasonable probability that the outcome of the trial clearly would have been different.
 {¶ 57} Further, in a bench trial we presume that the trial court only considered relevant, material, and competent evidence in arriving at its judgment when it does not affirmatively appear to the contrary.State v. Post (1987), 32 Ohio St.3d 380, 384. Thus, Yates' fourth assignment of error is overruled. *Page 18 
 {¶ 58} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, P.J., and PATRICIA A. BLACKMON, J., CONCUR
[1] The victim referred to Couch as his "brother," although they are not related.
[2] The victim made an in-court identification of Yates.
[3] We note that Yates claims that the victim was not credible because he denied consuming alcohol and drugs, but his blood work was positive for alcohol, PCP, and cannabis. Yates also questions the credibilty of Couch and argues that he may not have been at the crime scene because Coleman did not identify him and he did not provide a statement to police. The credibility of witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 231. Further, Yates bases this contention on the wrong standard of law. In a sufficiency argument, credibility of the witnesses should never be considered. It is weight of the evidence that concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. See State v. Thompkins (1997),78 Ohio St.3d 380, 387. *Page 1